**13 CIV 900**

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---

GREENLIGHT CAPITAL, LP,
GREENLIGHT CAPITAL QUALIFIED, LP,
GREENLIGHT CAPITAL (GOLD), LP,
GREENLIGHT CAPITAL OFFSHORE
PARTNERS, and GREENLIGHT CAPITAL
OFFSHORE MASTER (GOLD), LTD.,

                Plaintiffs,

v.

APPLE, INC.,

                Defendant.

Civil Action No. _____

---

**MEMORANDUM OF LAW IN SUPPORT OF THE GREENLIGHT ENTITIES'
MOTION FOR PRELIMINARY INJUNCTION**

Mitchell P. Hurley
Michael A. Asaro
Christopher M. Egleson
Ashley F. Waters
AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, NY 10036
Tel: (212) 872-1011
Fax: (212) 872-1002
mhurley@akingump.com
masaro@akingump.com
cegleson@akingump.com
awaters@akingump.com

*Counsel for Plaintiffs*

# TABLE OF CONTENTS

Preliminary Statement ..................................................................................................................1

Statement of Facts ........................................................................................................................2

I.  Legal Framework ...............................................................................................................2

II. Factual Background ...........................................................................................................3

Standard for Granting Preliminary Relief .....................................................................................5

Argument ......................................................................................................................................6

I.  This Court Should Enjoin Apple From Amending Its Articles of Incorporation
    Based on Legally Flawed Proxy Materials .........................................................................6

    A.  The Greenlight Entities Are Likely To Succeed On The Merits Of Their
        Claim Because Apple's Bundling Of Distinct Matters Into One Proposal
        Frustrates "Fair Corporate Suffrage" In Direct Violation Of Rule 14a-4 ..............6

    B.  The Greenlight Entities Will Suffer Irreparable Injury If Injunctive Relief
        Is Denied, Which Is Exactly Why The Second Circuit Has A "Strong
        Preference For An Injunctive Remedy Over Damages For Violations Of
        The Proxy Rules." ...................................................................................................8

    C.  The Balance of Hardships Favors Preliminary Relief Because Fair
        Corporate Voting Is A Crucial Entitlement, And Any Harm To Apple Will
        Be Minimal ............................................................................................................10

    D.  The Public Interest Would Be Served by Preliminary Injunctive Relief ..............11

II. Any Bond Should Be Set At A Reasonable Sum In An Amount Proven By Apple ..........12

Conclusion ..................................................................................................................................14

# TABLE OF AUTHORITIES

Page(s)

CASES

*Astra Oil Trading NV v. PRSI Trading Co. LP*,
No. 08-cv-10467, 2008 WL 5429821 (S.D.N.Y. Dec. 23, 2008) ..................................6

*Bender v. Jordan*,
439 F. Supp. 2d 139 (D.D.C. 2006) ...........................................................................13

*B.G. Soft Ltd. v. BG Soft Int'l, Inc.*,
No. 01-cv-17, 2002 WL 1467744 (E.D.N.Y. Apr. 29, 2002) .....................................12

*BigStar Entm't, Inc. v. Next Big Star, Inc.*,
105 F. Supp. 2d 185 (2000) .........................................................................................6

*Chambers v. Briggs & Stratton Corp.*,
863 F. Supp. 900 (E.D. Wis. 1994) ............................................................................13

*Citigroup Global Mks., Inc. v. VCG Special Opportunities Master Fund Ltd.*,
598 F.3d 30 (2d Cir. 2010) .........................................................................................11

*eBay, Inc. v. MercExchange, LLC*,
547 US 388 (2006) .......................................................................................................5

*Int'l Equity Invs., Inc. v. Opportunity Equity Partners Ltd.*,
441 F. Supp. 2d 552 (S.D.N.Y. 2006) ........................................................................12

*Koppel v. 4987 Corp.*,
167 F.3d 125 (2d. Cir. 1998) ............................................................................3,7,8,10

*J.I. Case Co. v. Borak*,
377 U.S. 426 (1964) .....................................................................................................6

*Lone Star Steakhouse & Saloon, Inc. v. Adams*,
148 F. Supp. 2d 1141 (D. Kan. 1991) ........................................................................10

*MONY Grp., Inc. v. Highfields Capital Mgmt., L.P.*,
368 F.3d 138 (2d Cir. 2004) ........................................................................................9

*Mullins v. City of N.Y.*,
626 F.3d 47 (2d Cir. 2010) ........................................................................................10

*Roosevelt v. E.I. Du Pont de Nemours & Co.*,
958 F.2d 416 (2d Cir. 1992) ......................................................................................10

*Salinger v. Colting*,
607 F.3d 68 (2d. Cir. 2010) ......................................................................................5,9

*SEC v. Toomey*,
866 F. Supp. 719 (S.D.N.Y. 1992) .............................................................................11

*SEC v. Willis*,
777 F. Supp. 1165 (S.D.N.Y. 1991) ...........................................................................12

*St. Louis Police Ret. Sys. v. Severson*,
   No. 12-cv-5086, 2012 WL 5270125 (N.D. Cal. Oct. 23, 2012) ............................................. 13

*Virginia Bankshares, Inc. v. Sandberg*,
   501 U.S. 1083 (1991) ............................................................................................................. 10

*Wali v. Coughlin*,
   754 F.2d 1015 (2d Cir. 1985) .................................................................................................. 6

*Winter v. Natural Res. Def. Council, Inc.*,
   555 U.S. 7 (2008) .................................................................................................................. 11

**REGULATIONS**

17 C.F.R. § 240.14a-4 ................................................................................................. 1,2,3,7,8,10

**OTHER AUTHORITIES**

Communications Among Shareholders,
   Exchange Act Release No. 34-31326, 57 Fed. Reg. 48,276, 48,287 (Oct. 22, 1992) .............. 3

H.R. Rep. 73-1383, at 13 (1934) ....................................................................................................6

Mark A. Sargent & Dennis R. Honabach, *Proxy Rules Handbook* § 3.10 (2012-2013) ............... 7

Randall S. Thomas & Catherine T. Dixon, *Aranow & Einhorn on Proxy Contests for
   Corporate Control* ("*Proxy Contests*") § 9.01, at 9-23 & 9-24 n.77 (3d ed. 1999
   Supplement) ........................................................................................................................... 8

Regulation of Communications Among Shareholders,
   Securities Act Release Nos. 31326, 19031, 34-31326, IC-19031, 1992 WL 301258
   (Oct. 16, 1992) ........................................................................................................................ 7

By this motion, Plaintiffs (the "Greenlight Entities") seek to enjoin Defendant Apple, Inc. ("Apple") from giving effect to a shareholder vote on three proposed amendments to Apple's articles of incorporation because, as set forth below, Apple has improperly bundled those proposed amendments together in violation of federal securities law. The vote at issue is scheduled to proceed at a shareholder meeting scheduled for February 27, 2013.

## PRELIMINARY STATEMENT

Apple has called a shareholder meeting for February 27, 2013 at which its management has proposed to adopt three amendments to the company's articles of incorporation through a vote on a single proposal designated as Proposal No 2. Apple's management has solicited proxies from Apple shareholders on those amendments. One of those amendments—eliminating the company's power to issue preferred shares—will curtail the Board's capital management options and hurt shareholders. The Greenlight Entities, which together have a significant investment in Apple, oppose that single amendment and support the others bundled in Proposal No. 2.

Apple's current proxy statement and proxy card—the document that shareholders will fill out to indicate their voting preferences—require shareholders to vote "yes" or "no" on all three amendments in Proposal No. 2 together. Shareholders cannot vote "yes" to one amendment and "no" to another. The Greenlight Entities, and other shareholders who support some of these amendments but oppose others, will therefore have no choice but to either vote in favor of an amendment they oppose, or against an amendment they support.

The problem for Apple is that the Securities and Exchange Commission's regulations flatly prohibit this kind of "bundling" of distinct proposals in a proxy form. The form of proxy is required to "identify clearly and impartially *each matter intended to be acted upon*" and then to give the shareholder the opportunity to vote separately on "each separate matter." 17 C.F.R. §

1

240.14a-4(a)(3) & (b)(1) (emphasis added). Apple's proxy materials clearly violate this simple rule.

The Greenlight Entities have tried to convince Apple that Apple should not use its current proxy materials and instead separate the three amendments in Proposal No. 2 so that shareholders can vote on each separately. To date, Apple has refused. The Greenlight Entities bring this action to compel Apple to comply with its obligations under the securities laws and regulations, and seek preliminary and permanent injunctive relief to prevent irreparable harm to Apple's shareholders. The Second Circuit has instructed that injunctive relief is the preferred remedy in a situation like this one: it is far better for shareholders – and for the company itself – if the company gets it right the first time, rather than allowing a company to give effect to a shareholder vote that violates the law and trying to sort out the mess after the fact. The Court should enjoin Apple from giving effect to a shareholder vote based on legally flawed proxy materials. Apple has ample time to modify the proxy materials in time for the February 27, 2013 meeting.

## STATEMENT OF FACTS

### I. LEGAL FRAMEWORK

The Securities Exchange Act of 1934, as amended (the "Exchange Act"), and the regulations promulgated thereunder by the Securities and Exchange Commission (the "Commission"), govern shareholder proxy solicitations for publicly traded companies. In 1992, the Commission issued certain amendments to the proxy rules that are known as the "unbundling" rules. Rule 14a-4(a)(3) provides that "[t]he form of proxy . . . [s]hall identify clearly and impartially *each matter intended to be acted upon*, whether or not related to or conditioned on the approval of other matters." 17 C.F.R. § 240.14a-4(a)(3) (emphasis added). Rule 14a-4(b)(1) provides that the form of proxy must provide "an opportunity to specify by

boxes a choice between approval or disapprovals of, or abstention *with respect to each separate matter* referred to therein as intended to be acted upon, other than elections to office." *Id.* § 240.14a-4(b)(1) (emphasis added). These "new rules were specifically intended to '"unbundle" management proposals.'" *Koppel v. 4987 Corp.*, 167 F.3d 125, 138 (2d Cir. 1998) (quoting Regulation of Communications Among Shareholders, Exchange Act Release No. 34-31326, 57 Fed. Reg. 48,276, 48,287 (Oct. 22, 1992)). The effect of these provisions is to "require distinct voting items on 'each separate matter.'" *Id.* (quoting 17 C.F.R. § 240.14a-4(b)(1)).

## II. FACTUAL BACKGROUND

Apple is publicly traded on the NASDAQ Exchange under the symbol AAPL. The Greenlight Entities and their affiliates held more than 1.3 million common shares of Apple as of January 2, 2013, the record date for Apple's upcoming general shareholder meeting. *See* Einhorn Decl. ¶ 2.

Under Apple's articles of incorporation, Apple's board of directors currently has the power to issue preferred stock. *Id.* ¶ 3. In May 2012, the Greenlight Entities made a proposal to Apple that the board use this power to issue perpetual preferred shares directly to Apple shareholders. *Id.* As proposed by the Greenlight Entities, the shares would have a cumulative dividend taxable at preferential tax rates. *Id.* These shares would be a tax efficient way of returning value to investors, and the Greenlight Entities believed that issuing such shares would benefit all of Apple's shareholders and increase the value of their shares. *Id.* In September 2012, Apple declined the Greenlight Entities' suggestion. *Id.*

On January 7, 2013, Apple filed a proxy statement with the Commission, in which it solicited shareholder support for a number of management proposals. *Id.* ¶ 4; *see* Definitive

Proxy & Proxy Card, attached as Ex. A to the Hurley Decl. Apple has scheduled its 2013 annual shareholder meeting for February 27, 2013. Einhorn Decl. ¶ 4.

The proposal relevant to this action is Proposal No. 2. That proposal groups together three discrete amendments to Apple's articles of incorporation for a single up-or-down vote. *Id.* ¶ 5. First, the proposal would modify the articles to facilitate "majority voting" for directors under California law. Einhorn Decl. ¶ 5; Definitive Proxy at 40. Second, the proposal would establish a par value for Apple's common stock. Einhorn Decl. ¶ 5; Definitive Proxy at 40-41. And third, crucially, the proposal would eliminate Apple's power to issue preferred stock. Einhorn Decl. ¶ 5; Definitive Proxy at 40.

Apple's proxy requires shareholders to vote either "yes" or "no" to all of these proposed modifications as a group. Einhorn Decl. ¶ 6; Definitive Proxy at 39-41; Proxy Card. A shareholder cannot pick and choose among these three amendments, but must vote them up or down together.

The Greenlight Entities support the first two proposed changes to Apple's articles of incorporation. Einhorn Decl. ¶ 7. It opposes, however, the proposed elimination of Apple's power to issue preferred shares, and believes that the proposed change is not in the best interests of the shareholders. *Id.* ¶ 8. The power to issue preferred stock gives the board important flexibility in managing Apple's capital, and the Greenlight Entities believe this flexibility can be used to enhance shareholder value. *Id.* But because the three proposed modifications to the articles are bundled together, the Greenlight Entities, like other shareholders who support some but not all of the modifications, will be forced to either vote in favor of one or more modifications they oppose, or to vote against one or more modifications they support. *Id.* ¶ 9.

On February 1, 2013, the Greenlight Entities urged Apple to withdraw from consideration by its shareholders the amendment eliminating Apple's ability to issue preferred shares. *Id.* ¶ 10. Apple declined to do so. On February 5, 2013, the Greenlight Entities emailed Apple to once again ask it to withdraw the amendment, or at a minimum, to unbundle the three proposed amendments to the articles of incorporation, as the Commission's unbundling rules require. *Id.* ¶ 11. In a telephone call on February 6, 2013, Apple indicated that it would not comply with the Greenlight Entities' request, although it stated that it will reconsider the Greenlight Entities' May 2012 proposal and offered to schedule a meeting. *Id.* ¶ 12.

The Greenlight Entities now reluctantly bring this action to compel Apple to comply with its regulatory obligations, and seek preliminary relief to ensure that Apple does not amend its articles of incorporation based on proxy voting that is not conducted in compliance with the Exchange Act and the Commission's regulations.

## STANDARD FOR GRANTING PRELIMINARY RELIEF

A preliminary injunction under Rule 65 of the Federal Rules of Civil Procedure should issue where the movant shows that (1) it is likely to succeed on the merits of their claim; (2) it is likely to suffer irreparable injury in the absence of an injunction and remedies at law, such as monetary damages, are inadequate to compensate the movant for its injury; (3) the balance of hardships tips in the movant's favor; and (4) the public interest would not be disserved by the issuance of a preliminary injunction. *Salinger v. Colting*, 607 F.3d 68, 77 (2d Cir. 2010) (citing *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006)) (discussing preliminary injunction standard).

# ARGUMENT

I. **THIS COURT SHOULD ENJOIN APPLE FROM AMENDING ITS ARTICLES OF INCORPORATION BASED ON LEGALLY FLAWED PROXY MATERIALS**

   A. **The Greenlight Entities Are Likely To Succeed On The Merits Of Their Claim Because Apple's Bundling Of Distinct Matters Into One Proposal Frustrates "Fair Corporate Sufferage" In Direct Violation Of Rule 14a-4**

To demonstrate a likelihood of success on the merits sufficient to support injunctive relief, a movant "need not show that success is certain, only that the probability of prevailing is 'better than fifty percent.'" *BigStar Entm't, Inc. v. Next Big Star, Inc.*, 105 F. Supp. 2d 185, 191 (S.D.N.Y. 2000) (quoting *Wali v. Coughlin*, 754 F.2d 1015, 1025 (2d Cir. 1985)). The Court may take into account the straightforward nature of the claim in considering the movant's likelihood of success on the merits. *See Astra Oil Trading NV v. PRSI Trading Co. LP*, No. 08-cv-10467, 2008 WL 5429821, at *4 (S.D.N.Y. Dec. 23, 2008) ("We . . . conclude, given the straightforward nature of plaintiff's claim for indemnification and based on the documents submitted by the parties, that plaintiff has stated a viable claim, that plaintiff has made a *prima facie* showing of a likelihood of success on the merits of that claim, and that the amount demanded from defendant exceeds all known counterclaims.").

Apple's conduct here is in violation of Rules 14a-4(a)(3) and 14a-4(b)(1), and thus the Greenlight Entities' likelihood of success is strong. Section 14(a) of the Exchange Act was enacted in "the congressional belief that 'fair corporate suffrage is an important right that should attach to every equity security bought on a public exchange.'" *J.I. Case Co. v. Borak*, 377 U.S. 426, 431 (1964) (quoting H.R. Rep. 73-1383, at 13 (1934)). In order to fulfill the rule's important purpose, the Commission passed rules to enforce Section 14(a), including a 1992 revision that is dispositive in this case. As stated by a leading treatise:

> [Prior to 1992,] [c]orporations [had the ability] to bundle proposals in a way that required shareholders to vote either in favor of or against all of the grouped items. Thus, the corporation could

6

condition the payment of a special dividend upon the approval of a proposal calling for the adoption of an antitakeover charter amendment. The effect of such grouping was to deny shareholders the opportunity to vote against one of the bundled items and for the other . . . . In its June 1992 Proposal, the SEC proposed to amend Rule 14a-4(a)(3) and Rule 14a-4(b)(1) to require the soliciting party to identify each matter to be acted upon, whether or not related or mutually conditioned on the approval of the other matters, and to use a form of proxy that permitted the solicited party to vote on each matter identified.

Mark A. Sargent & Dennis R. Honabach, *Proxy Rules Handbook* § 3.10 (2012-2013).

In October 1992, the SEC formally adopted its proposal. *See* Regulation of Communications Among Shareholders, Securities Act Release Nos. 31326, 19031, 34-31326, IC-19031, 1992 WL 301258, at *23-24 (Oct. 16, 1992). Today, the rule now states, in relevant part, that "[t]he form of proxy . . . [s]hall identify clearly and impartially each separate matter intended to be acted upon, whether or not related to or conditioned on the approval of other matters, and whether proposed by the registrant or by security holders . . . . [m]eans shall be provided in the form of proxy whereby the person solicited is afforded an opportunity to specify by boxes a choice between approval or disapproval of, or abstention *with respect to each separate matter* referred to therein as intended to be acted upon . . . ." 17 CFR §§ 240.14a-4(a)(3) & (b)(1) (emphasis added).[1]

Apple's proxy directly violates these rules because, as described above, it requires a single up-or-down vote on three distinct proposals. To violate Rules 14a-4(a)(3) and 14a-4(b)(1), all that is required is that the bundled proposals be "separate matters." According to the Second Circuit, "the actual issue of what constitutes a 'separate matter' for purposes of the two rules is ultimately a question of fact to be determined in light of the corporate documents and in

---

[1] As the Second Circuit has held, shareholders like the Greenlight Entities have a private right of action to enforce these rules. *See Koppel*, 167 F.3d at 135.

consideration of the SEC's apparent preference for more voting items rather than fewer." *Koppel*, 167 F.3d at 138 (finding that at least two of the items grouped together by the defendant were "separate" items under Rules 14a-4(a)(3) & (b)(1)).

The Commission itself has clarified that the unbundling rules apply specifically to charter amendments: another leading treatise explains that "the SEC has made clear that, if standing alone, the action to be taken requires a shareholder vote, as in the case of a charter amendment . . . a separate vote is generally required," such that "[s]eparate votes must be solicited" for multiple "proposed amendments to articles of incorporation . . . ." Randall S. Thomas & Catherine T. Dixon, *Aranow & Einhorn on Proxy Contests for Corporate Control* ("*Proxy Contests*") § 9.01, at 9-23 & 9-24 n.77 (3d ed. 1999 Supplement).[2] Here, the three proposals at issue—adoption of majority voting for the election of directors, establishing a par value for Apple's common stock, and eliminating Apple's ability to issue preferred stock—are not related, so they are "separate matters." In short, Apple's bundling of multiple amendments to its articles of incorporation is barred by Rule 14a-4, so the Greenlight Entities' are likely to succeed on the merits of their claim.

> **B.    The Greenlight Entities Will Suffer Irreparable Injury If Injunctive Relief Is Denied, Which Is Exactly Why The Second Circuit Has A "Strong Preference For An Injunctive Remedy Over Damages For Violations Of The Proxy Rules."**

The Greenlight Entities will suffer irreparable harm if the requested preliminary relief is not granted. "Harm might be irremediable, or irreparable, for many reasons, including that a loss

---

[2] The treatise explains that this "guidance has been furnished by the [Commission's] Division of Corporation Finance to registrants through the review and comment process and in response to telephonic requests for interpretive guidance," although it has not been memorialized. *Proxy Contests* § 9.01, at 9-23 n.76.

8

is difficult to replace or difficult to measure, or that it is a loss that one should not be expected to suffer." *Salinger*, 607 F.3d at 81.

Here, the Greenlight Entities will suffer irreparable harm absent immediate relief. Apple's annual shareholder meeting is presently scheduled for February 27, 2013. Without an injunction, Apple will give effect to the planned vote on Proposal No. 2, with Apple shareholders, including the Greenlight Entities, being required to cast their ballots without the benefit of being able to vote on each amendment separately. No matter which way the vote goes, the Greenlight Entities will have been denied their right to vote on each amendment separately, and corporate action will have either been approved or denied in violation of the securities laws. The Greenlight Entities will be compelled to vote against their own interests. They will have no choice but to either vote against two proposals that they support, or to vote in favor of a proposal that they strongly oppose.

A violation of the bundling rules is in this way like a violation of the Exchange Act's proxy disclosure: in the disclosure context, as here, the danger is that shareholders will be forced to vote against their own interests. As the Second Circuit has explained in the disclosure context, "[i]t is well-established that a transaction . . . that is influenced by noncompliance with the disclosure provisions of the various federal securities laws can constitute irreparable harm." *MONY Grp., Inc. v. Highfields Capital Mgmt., L.P.*, 368 F.3d 138, 147 (2d Cir. 2004) (concluding that "allowing [the defendant] to distribute duplicate proxy cards to [] shareholders during a closely contested shareholder vote without complying with Rule 14a-3(a) would cause [] irreparable harm"). As one court has explained, "irreparable injury would occur absent an injunction prohibiting the voting of proxies based upon false and misleading information" because "the free and intelligent voting rights of plaintiff's shareholders will be forfeited if such

votes are exercised based upon false or misleading information." *Lone Star Steakhouse & Saloon, Inc. v. Adams*, 148 F. Supp. 2d 1141, 1149-50 (D. Kan. 1991). Here, Apple's proxy materials frustrate the "free and intelligent voting rights" of shareholders like the Greenlight Entities by compelling them to vote for amendments they oppose or against amendments they support.

This kind of irreparable injury cannot be remedied by an action at law. The Second Circuit's cases are explicit that preemptive injunctive relief is strongly preferred to an after-the-fact action for damages. Suits seeking damages for rule violations involve complex causation issues that can be avoided when an injunctive remedy is sought prior to the disputed corporate activity occurring. *See Roosevelt v. E.I. Du Pont de Nemours & Co.*, 958 F.2d 416, 422-23 (2d Cir. 1992) (distinguishing *Va. Bankshares, Inc. v. Sandberg*, 501 U.S. 1083 (1991) in part on this ground). As a result, with respect to claims arising under Rule 14a-4(a)(3) and (b)(1), the Second Circuit has "a strong preference for an injunctive remedy over damages for violations of the proxy rules." *Koppel*, 167 F.3d at 137. This is exactly the sort of case where application of the Second Circuit's "strong preference" makes sense. By deciding the legality of Apple's bundling now, potential complexities and irreparable damages down the road can be avoided.

### C. The Balance of Hardships Favors Preliminary Relief Because Fair Corporate Voting Is A Crucial Entitlement, And Any Harm To Apple Will Be Minimal

To prevail on a motion for preliminary injunction under Rule 65, the movant must demonstrate that "the balance of hardships tips decidedly in favor of the moving party." *Mullins v. City of N.Y.*, 626 F.3d 47 (2d Cir. 2010). This standard requires the Court to compare the impact denying the motion would have on the movant with any adverse impact granting the motion would have on the defendant.

Here, the balance of hardships weighs heavily in the Greenlight Entities' favor. The harm faced by the Greenlight Entities is the denial of their legal right to vote on each amendment individually. As described above, "fair corporate sufferage" is crucial to proper corporate governance and is a primary focus of the securities laws, so violation of the proxy rules is a serious harm. And the Greenlight Entities are not alone: thousands of Apple shareholders will be denied their legal entitlement to a fair vote if the vote is allowed to proceed here.

Any harm to Apple, by contrast, would be minimal. Apple can simply amend its proxy materials to require separate votes on each amendment, thereby solving the problem. But even if it refuses to do this, the only harm it faces is a brief delay in bringing these three amendments—and only these three amendments—to a shareholder vote. Significantly, none of the amendments addresses any urgent matter Apple is presently facing. There is nothing urgent about the establishment of a par value. And Apple's current directors have all committed, as a matter of board policy, to abiding by a majority vote of the shareholders and have thus announced their intention to withdraw from the board absent such a majority. *See* Definitive Proxy Statement at 39. So the vote on the majority-voting amendment will have no immediate impact either. Any delay will not result in meaningful hardship to Apple.

### D. The Public Interest Would Be Served by Preliminary Injunctive Relief

Finally, to obtain preliminary injunctive relief, a plaintiff must show that an injunction is in the public interest. *Citigroup Global Mks., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 34-35 (2d Cir. 2010) (citing *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7 (2008)). Here, the public interest is served by the issuing of an injunction because an injunction will prevent violations of the securities laws. It is established that SEC civil enforcement actions "serve the public interest in accomplishing voluntary compliance with the securities laws." *SEC v. Toomey*, 866 F. Supp. 719, 724 (S.D.N.Y. 1992) (internal citation and

quotation marks omitted); *see also SEC v. Willis*, 777 F. Supp. 1165, 1175 (S.D.N.Y. 1991) ("The SEC [acts] in the public interest by attempting to enforce effectively the federal securities laws under its statutory mandate." (internal citation and quotation marks omitted)). Here, the Greenlight Entities' suit serves the public interest in the same way that an SEC civil enforcement action does—compelling compliance with and preventing violation of the securities laws.

The Greenlight Entities' are just some of thousands of shareholders in Apple, a public company. Millions of Apple shares are publicly traded daily. All of these shareholders and prospective shareholders have an interest in making sure that Apple complies with the federal securities laws, and each has an interest in exercising its "corporate suffrage" rights on each and every amendment requiring shareholder approval. Absent intervention from this Court, all of the thousands of Apple shareholders will have their rights violated by Apple.

## II. ANY BOND SHOULD BE SET AT A REASONABLE SUM IN AN AMOUNT PROVEN BY APPLE

Rule 65(c) of the Federal Rules of Civil Procedure provides that a preliminary injunction shall be secured by "security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." The provision is "intended to afford security only for those damages, if any, that might be 'proximately caused by the [wrongful] issuance of [an] injunction.'" *Int'l Equity Invs., Inc. v. Opportunity Equity Partners Ltd.*, 441 F. Supp. 2d 552, 565–66 (S.D.N.Y. 2006) (Kaplan, J.) (quoting *B.G. Soft Ltd. v. BG Soft Int'l, Inc.*, No. 01-cv-17, 2002 WL 1467744, at *2 (E.D.N.Y. Apr. 29, 2002)). The Court is "not required to order security in respect of claimed economic damages that are no more than speculative." *Id.* "[T]he burden is on the party seeking security to establish a rational basis for the amount of the proposed bond." *Id.*

Here, any non-speculative monetary damages arising proximately from an injunction, if the Court were ultimately to determine that the injunction was wrongly issued, will be nominal. There is limited precedent on the amount of bond required in similar cases seeking injunctive relief related to proxy voting, suggesting that security is often dispensed with by the defendant in such cases. What little precedent there is shows that the amount of such a bond, if required, will be tied to demonstrable costs for issuing a new solicitation, and will be minimal. *See, e.g., Bender v. Jordan*, 439 F. Supp. 2d 139, 179 (D.D.C. 2006) ($20,000 bond reflecting cost of proxy materials); *Chambers v. Briggs & Stratton Corp.*, 863 F. Supp. 900, 907–08 (E.D. Wis. 1994) ($50,000 bond for same); *St. Louis Police Ret. Sys. v. Severson*, No. 12-cv-5086, 2012 WL 5270125, at *6 (N.D. Cal. Oct. 23, 2012) ($100,000 bond for same). Apple will bear the burden of proving the amount of any such bond if it does not waive its claim to security.

## CONCLUSION

For the foregoing reasons, the Greenlight Entities respectfully request that the Court preliminarily enjoin Apple from (a) certifying or otherwise accepting any vote cast, by proxy, for or on behalf of any Apple shareholder in connection with Proposal No. 2 in Apple's Definitive Proxy Statement or Proxy Card, (b) amending its articles of incorporation based upon any such vote or votes, or (c) otherwise proceeding at its February 27, 2013 general shareholders meeting or at any other time, in each case, in a manner inconsistent with Rule 14a-4(a)(3) & (b)(1).

Dated: February 7, 2013
      New York, New York

                           Respectfully submitted,

                           _____
                           Mitchell P. Hurley
                           Michael A. Asaro
                           Christopher M. Egleson
                           Ashley F. Waters
                           AKIN GUMP STRAUSS HAUER & FELD LLP
                           One Bryant Park
                           New York, NY 10036
                           Tel: (212) 872-1011
                           Fax: (212) 872-1002
                           mhurley@akingump.com
                           masaro@akingump.com
                           cegleson@akingump.com
                           awaters@akingump.com

                           *Counsel for Plaintiffs*

# CERTIFICATE OF SERVICE

I hereby certify that on this 7th day of February, 2013, I have caused a copy of the foregoing memorandum of law to be delivered by hand on the following:

Apple, Inc.
1 Infinite Loop
Cupertino, California 95014

_____
Mitchell P. Hurley