IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GREENLIGHT CAPITAL, LP, GREENLIGHT CAPITAL QUALIFIED, LP, GREENLIGHT CAPITAL (GOLD), LP, GREENLIGHT CAPITAL OFFSHORE PARTNERS, and GREENLIGHT CAPITAL OFFSHORE MASTER (GOLD), LTD.,<br><br>Plaintiffs,<br><br>v.<br><br>APPLE INC.,<br><br>Defendant. | Civil Action No. 13-cv-900 (RJS)<br><br>ECF Case |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF THE
GREENLIGHT ENTITIES' MOTION FOR PRELIMINARY INJUNCTION**

Mitchell P. Hurley
Michael A. Asaro
Christopher M. Egleson
Ashley F. Waters
AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, NY 10036
Tel: (212) 872-1011
Fax: (212) 872-1002
mhurley@akingump.com
masaro@akingump.com
cegleson@akingump.com
awaters@akingump.com

*Counsel for Plaintiffs*

## TABLE OF CONTENTS

Table of Authorities .................................................................................................................. ii

Argument .................................................................................................................................. 1

I.     Apple's Bundling of Three Important, Unrelated Amendments Violates The Commission's Unbundling Rules, Which Give Shareholders, Not Apple, The Right To Decide Whether Those Amendments Are "Pro-Shareholder" ............................. 1

    A.     Apple Cannot Ignore The Unbundling Rules Just Because It Thinks Its Bundled Changes Will Benefit Shareholders ............................................................ 2

    B.     Apple's Own Evidence Shows That The Three Amendments Are Not "Ministerial" Or "Technical" ........................................................................................ 3

    C.     The Admittedly "Separate" Amendments To Apple's Articles Of Incorporation Are Not A Permissible "Single Proposal" ................................................. 4

    D.     The Commission Has Not Approved Apple's Proxy Materials ............................. 5

II.     The Greenlight Entities Will Be Irreparably Harmed Absent Relief, And Apple Has Offered No Reason For This Court To Ignore The "Strong Preference For An Injunctive Remedy Over Damages For Violations Of The Proxy Rules" ............................. 6

III.     The Balance of Hardships And The Public Interest Favor Preliminary Relief .................... 9

Conclusion ............................................................................................................................... 11

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*Appalseed Prods., Inc. v. Medianet Digital, Inc.,*
  No. 11 Civ. 5922 (PGG), 2012 WL 2700383 (S.D.N.Y. July 6, 2012) ...................................9

*Chambers v. Briggs & Stratton Corp.,*
  863 F. Supp. 900 (E.D. Wis. 1994) ..............................................................................10

*Clairdale Enters., Inc. v. C. I. Realty Investors,*
  423 F. Supp. 261 (S.D.N.Y. 1976) ..................................................................................7

*Dexter 345, Inc. v. Cuomo,*
  663 F.3d 59 (2d Cir. 2011) .............................................................................................6

*Edelman v. Salomon,*
  559 F. Supp. 1178 (D. Del. 1983) ...................................................................................6

*Grout Shield Distribs., LLC v. Elio E. Salvo, Inc.,*
  824 F. Supp. 2d 389 (E.D.N.Y. 2011) ............................................................................9

*In re Real Estate Assocs. Ltd. P'ship Litig.,*
  223 F. Supp. 2d 1109 (C.D. Cal. 2002) ..........................................................................5

*Koppel v. 4987 Corp.,*
  167 F.3d 125 (2d Cir. 1999) ....................................................................................*passim*

*Koppel v. 4987 Corp.,*
  Nos. 98-7026 (L) ..........................................................................................................10

*Legacy Trading Grp., LLC v. Unico, Inc.,*
  No. 07-cv-2344-L, 2007 WL 4463974 (S.D. Cal. Dec. 18, 2007) ...............................10

*Lewis v. Gen. Emp't Enters., Inc.,*
  No. 91-cv-0291, 1991 WL 11383 (N.D. Ill. Jan. 21, 1991) ..........................................10

*Lone Star Steakhouse & Saloon, Inc. v. Adams,*
  148 F. Supp. 2d 1141 (D. Kan. 2001) ........................................................................7, 10

*Med. Comm. for Human Rights v. SEC,*
  432 F.2d 659 (D.C. Cir. 1970) .........................................................................................7

*Packard Instrument Co. v. ANS, Inc.,*
  416 F.2d 943 (2d Cir. 1969) ............................................................................................6

*SEC v. Falstaff Brewing Corp.,*
  No. 77-894, 1978 WL 1120 (D.D.C. Oct. 28, 1978) .......................................................5

*Unicon Mgmt. Corp. v. Koppers Co.,*
  366 F.2d 199 (2d Cir. 1966) ............................................................................................6

*United Paperworkers Int'l Union v. Int'l Paper Co.,*
  801 F. Supp. 1134 (S.D.N.Y. 1992) ................................................................................5

*Woodward & Lothrop, Inc. v. Schnabel,*
　　593 F. Supp. 1385 (D.D.C. 1984)..................................................................................10

*XL Specialty Ins. Co. v. Level Global Investors, L.P.,*
　　874 F. Supp. 2d 263 (S.D.N.Y. 2012)..............................................................................6

**STATUTES**

17 C.F.R. § 240.14a-9(b) ........................................................................................................5

17 C.F.R. §§ 240.14a-4(a)(3) & (b)(1) ....................................................................................1

**RULES**

Rules 14a-4(a)(3) .................................................................................................................4, 6

Rule 14a-4(b)(1).....................................................................................................................4, 6

**OTHER AUTHORITIES**

SEC Division of Corporation Finance, Manual of Publicly Available Telephone
　　Interpretations, 1S. Rule 14a-14(a)(3), 2004 WL 3383931 (5th Supp. 2004) ..................5

SEC Division of Corporation Finance, Filing Review Process (Modified Nov. 6, 2012), at
　　http://www.sec.gov/divisions/corpfin/cffilingreview.htm ...............................................5

Randall S. Thomas & Catherine T. Dixon, *Aranow & Einhorn on Proxy Contests for
Corporate Control* ("*Proxy Contests*") § 9.01, at 9-23 n.77 (3d ed. 1999 Supp.).................5

The proxy materials that the Greenlight Entities have challenged in this action bundle together three material and unrelated amendments to Apple's articles of incorporation.[1] Federal securities regulations flatly prohibit that bundling in the clearest of terms. Apple's defense is that its violation of the law should be forgiven and the vote allowed to proceed because the amendments are all "pro-shareholder." But the law gives shareholders the right to vote on amendments to articles of incorporation precisely because it is for the *shareholders*, rather than the company, to decide what is "pro-shareholder."

The law has a "strong preference" for enjoining such votes beforehand rather than forcing shareholders to vote in violation of the law and against their own interests. Despite the federal regulations' plain text barring this kind of bundling, Apple plans to charge ahead with its vote. Apple should not be allowed to substitute its judgment for its shareholders' judgment, and should be enjoined from giving effect to a vote carried out in violation of the plain text of the law.

## ARGUMENT

### I. Apple's Bundling of Three Important, Unrelated Amendments Violates The Commission's Unbundling Rules, Which Give Shareholders, Not Apple, The Right To Decide Whether Those Amendments Are "Pro-Shareholder"

Apple's proxy materials directly violate 17 CFR §§ 240.14a-4(a)(3) & (b)(1), the Commission's unbundling rules. Apple agrees that one of the rules' purposes is to avoid "unclear or coercive proxy proposals that [would] prevent[] shareholders from voting independently on potentially favorable and unfavorable matters." Opp. at 10. In adopting those rules, the Commission, as Apple acknowledges, was "focused on the dangers of bundling in situations where a shareholder 'may be obliged to vote in favor of some proposals he or she would otherwise oppose in order to support other, more desirable proposals.'" *Id.* at 11–12 (quoting Sec. Exch. Act Release No. 31326 (Oct. 16, 1992)).

---

[1] Capitalized terms have the meaning used in the Greenlight Entities' opening brief.

1

Apple's proxy materials do exactly what it agrees the unbundling rules were designed to avoid. The Greenlight Entities would like to vote in favor of the par-value and majority voting amendments and against the elimination of preferred shares. But Apple's proxy denies shareholders the opportunity to do just that. Apple offers four reasons why this Court should disregard the mandate of the unbundling rules here, but none overcomes the text of the rules or justifies bundling these three separate amendments into one proposal.

### A. Apple Cannot Ignore The Unbundling Rules Just Because It Thinks Its Bundled Changes Will Benefit Shareholders

Apple suggests that these three amendments can be bundled because, in Apple's view, all three are "pro-shareholder." But the point of the Commission's rule is to let shareholders—rather than the company—decide which matters are "pro-shareholder" and which are not.

Here, the Greenlight Entities, major long-term Apple shareholders, disagree with Apple that the preferred-share amendment is "pro-shareholder." The primary reason to eliminate "blank check" preferred is because a board can use it to defend against a takeover. Einhorn Decl. ¶ 5; Opp. at 6; Levoff Decl. Ex. E at 10. But Apple, the world's second most valuable company, is not a realistic take-over candidate. Levoff Decl. Ex. E at 10. On the other hand, the proposed elimination of preferred shares reduces the Apple board's flexibility to manage its capital structure in the best interest of all shareholders. Einhorn Decl. ¶ 6. The Greenlight Entities and all other Apple shareholders are entitled to evaluate for themselves these and other competing concerns regarding each of the proposed amendments, and to cast unbundled votes with respect to each proposal based on their own conclusions about what is or is not in their best interests.

And there is disagreement about whether these amendments are in fact "pro-shareholder." For instance, Apple offers the Court the recommendations of two shareholder advisory services that support Proposal No. 2. But a third similar service, Egan Jones, has advised shareholders to

2

vote "no" exactly because the preferred-stock amendment "could frustrate use by the board of a useful tool to unlock shareholder value." Long Decl. Ex. A at 4. In the wake of the Greenlight Entities' suit, other shareholders have indicated their support for the Greenlight Entities' (and Egan Jones') view, or sought to revoke previously submitted proxies. Long Decl. ¶ 4. Clearly, the merits of the proposal are debatable. By linking this controversial proposal with two proposals that are more likely to be deemed favorable from a corporate governance perspective, Apple has created just the type of coercive vote that the unbundling rules were in part designed to avoid.

The recommendations and shareholder views that Apple does disclose, meanwhile, show the opposite of what Apple wants them to show. The Marco Consulting Group would "prefer to vote separately on the individual elements in Apple's Proxy Proposal No. 2." Marco Consulting Group Decl. ¶ 3. In its own statement, Institutional Shareholder Services ("ISS") expressed its concern about bundling, which it "believes . . . is not in the best interest of shareholders," and urged shareholders to "consider whether *on balance* the proposals, if they remain bundled, provide a net improvement or deterioration in governance." *See also* Glass Lewis Rec., Levoff Decl. Ex. F (similar). The unbundling rules prevent companies from forcing their shareholders to assess the "net" benefit or harm that flows from unrelated proposals. Apple's bundled proposal violates the Commission's rules and should be enjoined.

### B. Apple's Own Evidence Shows That The Three Amendments Are Not "Ministerial" Or "Technical"

Apple next argues that none of the three bundled proposed amendments are "material" and that the unbundling rules therefore should not apply. But Apple's own submissions show that all three amendments are material. As to the preferred share amendment, sophisticated investors and analysts disagree. That Apple, its shareholders, and entities like Egan Jones and

3

ISS are debating this issue is a hallmark of materiality. Moreover, Apple itself (i) contends that good corporate governance and California law require amending the majority voting provision (Opp. at 2), (ii) claims that failing to implement the par-voting provision would impose a "substantial financial burden" on Apple (Opp. at 20–21) and (iii) asserts that limiting the board's discretion to issue preferred stock is a key issue for the company and shareholders (Opp. at 21). In short, Apple itself admits that each of the proposed amendments is material, and federal securities laws require Apple to allow its shareholders to consider and vote on each item separately. Without the Court's intervention, the Greenlight Entities and all other similarly situated shareholders will face an impossible choice: they will be forced to vote for all of these significant amendments, or none of them. The unbundling rules are designed to prevent that situation, and should be enforced here.

### C. The Admittedly "Separate" Amendments To Apple's Articles Of Incorporation Are Not A Permissible "Single Proposal"

The question on the merits here is whether the three proposed amendments to Apple's articles of incorporation are "separate matter[s]" within the meaning of Rule 14(a)(3) and (b)(1) or are sufficiently intertwined to permit bundling them. They are separate. The only thing that links them is that they are all included in Proposal No. 2. Even Apple does not suggest they are related, and instead uses the word "separate" to describe them. Opp. at 12.

It is no answer to suggest, as Apple does, that these three unrelated amendments are part of a "single proposal" that asks shareholders "one thing—whether to amend the Articles." *Id.* That too begs the question. Grouping "separate" amendments into a "single proposal" is exactly the evil that the unbundling rules target. As the leading unbundling case indicates, that these are amendments to the articles of incorporation which "would have required a vote for each prong if at least two prongs . . . were attempted individually" means they are "separate," especially in

4

light of the Commission's "strong preference for more voting items rather than fewer." *Koppel v. 4987 Corp.*, 167 F.3d 125, 138 (2d Cir. 1999). The Commission's own guidance, on which Apple relies, confirms that the unbundling rules require that changes to a company's articles like these "should be set out as separate proposals."[2]

### D. The Commission Has Not Approved Apple's Proxy Materials

Apple notes that the Commission did not "comment" on its preliminary proxy materials, suggesting that the Commission's silence indicates approval. Corp Fin only "selectively reviews filings,"[3] and even where it does conduct review, that "shall not be deemed a finding by the SEC that the SEC has approved any statement contained therein." *In re Real Estate Assocs. Ltd. P'ship Litig.*, 223 F. Supp. 2d 1109, 1136 (C.D. Cal. 2002) (denying summary judgment to defendants on unbundling claim).[4] The Second Circuit upheld a private right of action to enforce the unbundling rules in part because the "SEC has made clear through its submissions to this Court that it 'needs private actions as a supplement to its efforts to enforce Rule 14a-4's separate matter requirement due to its limited staff resources.'" *Koppel*, 167 F.3d at 136.

---

[2] SEC Division of Corporation Finance ("Corp Fin"), Manual of Publicly Available Telephone Interpretations, 1S. Rule 14a-14(a)(3), 2004 WL 3383931 (5th Supp. 2004). *See also* Randall S. Thomas & Catherine T. Dixon, *Aranow & Einhorn on Proxy Contests for Corporate Control* ("*Proxy Contests*") § 9.01, at 9-23 & 9-24 n.77 (3d ed. 1999 Supp.) (confirming that unrelated amendments to articles of incorporation may not be bundled).

[3] Corp Fin, Filing Review Process (Modified Nov. 6, 2012), at http://www.sec.gov/divisions/corpfin/cffilingreview.htm (last visited on Feb. 15, 2013).

[4] *See also* 17 C.F.R. § 240.14a-9(b) (Corp Fin review does not mean "that the Commission has . . . approved . . . any matter to be acted upon by security holders."). Even a Corp Fin "no action" letter—which Apple does not claim to have received in this case—"is neither binding nor entitled to [*Chevron*] deference." *United Paperworkers Int'l Union v. Int'l Paper Co.*, 801 F. Supp. 1134, 1146 (S.D.N.Y. 1992). Issuers may not rely on the Commission "to tell them how to comply with the securities laws." *SEC v. Falstaff Brewing Corp.*, No. 77-894, 1978 WL 1120, at *26 (D.D.C. Oct. 28, 1978).

5

## II. The Greenlight Entities Will Be Irreparably Harmed Absent Relief, And Apple Has Offered No Reason For This Court To Ignore The "Strong Preference For An Injunctive Remedy Over Damages For Violations Of The Proxy Rules"

A vote on the improperly bundled items should be enjoined to prevent irreparable harm to the Greenlight Entities and the other shareholders of Apple. In cases involving preliminary injunctions preventing violations of Section 14(a)—and specifically of Rules 14a-4(a)(3) and (b)(1)—the Second Circuit has a "strong preference for an injunctive remedy over damages for violations of the proxy rules." *Koppel*, 167 F.3d at 137.

Moreover, where the movant demonstrates an especially strong likelihood of success on the merits, as the Greenlight Entities have done here, the threshold required for proving irreparable harm is all but met. "The decision to grant or to deny a preliminary injunction depends in part on a flexible interplay between the likelihood of success and irreparable harm. Thus, those two factors should not be considered in isolation." *XL Specialty Ins. Co. v. Level Global Investors, L.P.*, 874 F. Supp. 2d 263, 270-271 (S.D.N.Y. 2012) (citing *Packard Instrument Co. v. ANS, Inc.*, 416 F.2d 943, 945 (2d Cir. 1969)); *see also Unicon Mgmt. Corp. v. Koppers Co.*, 366 F.2d 199, 204–205 (2d Cir. 1966) ("reasonable certainty" of success at a final hearing may compensate for "lack of adequate showing of irreparable damage"). Indeed, a movant's compelling showing of an imminent legal wrong supports issuing an injunction even where the harm may be minimal. *See Edelman v. Salomon*, 559 F. Supp. 1178, 1189 (D. Del. 1983) (injunction appropriate "[w]here the violations of Section 14(a) are as clear as they are in this case"). So even if the Greenlight Entities had not shown substantial irreparable injury, an injunction would still be warranted.

In any case, the harm that the Greenlight Entities will suffer is exactly the type of harm requiring injunctive relief. As Apple acknowledges, an "irreparable" injury means one that is "actual and imminent" and "for which a monetary award cannot be adequate compensation."

6

*Dexter 345, Inc. v. Cuomo*, 663 F.3d 59, 63 (2d Cir. 2011). Proposal No. 2 currently *requires* the Greenlight Entities—and no doubt other shareholders—to vote against their own interests. That is an "actual and imminent" injury.[5] And no money damages can undo that harm: "Monetary damages cannot restore the right of shareholders to effectively exercise their corporate suffrage rights." *See Lone Star Steakhouse & Saloon, Inc. v. Adams*, 148 F. Supp. 2d 1141, 1149–50 (D. Kan. 2001).[6] Further, it can be easily prevented by Apple unbundling the proposals now.

Apple argues that the Court should instead, later, "order Apple to ask shareholders" to "restore" the articles to their current form. By then it will be too late. The Greenlight Entities and the other shareholders will have been irrevocably stripped of their right to fair corporate suffrage—the very right the unbundling rules were designed to vindicate—the moment they are forced to cast a vote based on the current proxy. Any subsequent vote would also be tainted by the overhang of the prior, invalid vote, and would likely result in confusion to the great majority of Apple's shareholders. Moreover, the Greenlight Entities have spent substantial time and resources campaigning against eliminating preferred stock, and those efforts would be rendered

---

[5] The right to an unbundled vote is substantial and has been carefully enshrined and protected by Congress, the Courts and the Commission. "[I]t is obvious to the point of banality . . . that Congress intended by its enactment of section 14 of the [Exchange Act] to give true vitality to the concept of corporate democracy." *Med. Comm. for Human Rights v. SEC*, 432 F.2d 659, 676 (D.C. Cir. 1970). "[I]mpermissible grouping of voting items" saps that vitality, and "frustrates fair corporate suffrage and the voting rights of shareholders no less than a misrepresentation or omission in a proxy." *Koppel*, 167 F.3d at 135–36. The injury to the Greenlight Entities and "corporate democracy" will be complete, substantial and irreversible if a vote based on the illegally bundled proxy is allowed to proceed.

[6] The three cases Apple cites on irreparable harm (Opp. at 18) do not comport with the cited Second Circuit law. First, none assesses the plaintiff's likelihood of success on the merits, contravening the rule that likelihood of success and irreparable harm should be considered together and not in isolation. Second, each applies a definition of "irreparable harm" that goes beyond the Second Circuit's definition of "an injury that is not remote or speculative but actual and imminent, and for which a monetary award cannot be adequate compensation." Finally, the last case, *Clairdale Enters., Inc. v. C. I. Realty Investors*, 423 F. Supp. 261 (S.D.N.Y. 1976), is a 1976 decision that considered whether to issue a preliminary injunction based on an outdated "balance of hardships" standard, rather than the standard currently in use in the Second Circuit.

meaningless if a second vote is required weeks or months from now. These harms all can be prevented by an injunction before the vote, and none can be remedied after.

Apple's approach is misguided for other reasons as well. If the vote on Proposal 2 proceeds on February 27, whether or not it passes, Apple will have no choice but to rely on the results of the vote, and conform its conduct to the Articles that emerge from the vote. For instance, if the vote establishes a par value for Apple's common stock, Apple apparently will make application "in certain states" for a reduction in Apple's "qualification rates and licensing fees." *See, e.g.*, Levoff Decl. ¶ 2(c). If the Court later determines that the February 27 vote was invalid, Apple may find itself in the position of having made sworn filings with state licensing and franchise authorities that it will have to seek to reverse, an unnecessary expenditure of time and resources that would be counter to the interests of all shareholders.

Similarly, if Proposal No. 2 fails—perhaps because it bundles the proposed par value amendment with other less favorable ones—Apple will lose the rate and fee advantages of that amendment until after Apple convenes a new meeting, costing Apple shareholders the value of rate and fee savings that will never be restored. Avoiding these types of problems is exactly why the Second Circuit favors injunctive relief in cases like this one. *See Koppel*, 167 F.3d at 137.

"Restoring" the articles to the current status quo if Proposal 2 is passed in its current form is also not as easy as Apple implies. An amendment to the Articles requires the affirmative vote of a majority of the Company's outstanding shares. Reddick Decl. ¶ 4. Shares that are not voted are deemed votes against the amendment. *Id.* This higher voting threshold benefits shareholders who oppose Proposal 2. *Id.* On the other hand, if Proposal 2 were to pass on February 27, and this Court subsequently ordered Apple to conduct a vote on whether to amend the Articles back to their current form, shares not voted would automatically be counted *against* that restorative

amendment. *Id.* at ¶13. Thus, the second vote Apple proposes would not remedy the harm caused by the bundled proxy and vote, because shareholders would face a more difficult challenge in seeking to return the Articles to their current form than they currently do in resisting the proposed change to those Articles.

Apple has also argued that under its current charter, its board would seek a shareholder vote before issuing preferred shares. Even if this is the board's current view, it is discretionary and not required by the current articles. The contemplated discretionary shareholder vote would not have to require an absolute majority; and if the board composition changes, its view could change. The Greenlight Entities anyway can seek to persuade the board to change their views.

With respect to Apple's argument that the Greenlight Entities waited too long to challenge the proxy, that is simply not true. The Greenlight Entities did not protest earlier because they did not expect there to be an issue in Apple's proxy. Einhorn Decl. ¶ 8. The Greenlight Entities were not aware that the proxy materials violated the unbundling rules until January 31, and sought relief just a week later. *Id.* That is alacrity, not delay. *Contra* Opp. at 19. Apple's cases involve dramatically longer "delays."[7]

### III. The Balance of Hardships And The Public Interest Favor Preliminary Relief

For the reasons just discussed, the Greenlight Entities and all of Apple's shareholders will suffer substantial harm that cannot be remedied by money damages if relief is denied. In comparison, the burden on Apple is slight. Apple estimates the cost of reissuing its proxy at about $3 million. That is about $0.003 per outstanding share. The chance to vote in compliance with federal law on important corporate governance issues is worth at least that much to investors and is not a substantial burden for a company worth more than $400 billion and which

---

[7] *See Appalseed Prods., Inc. v. Medianet Digital, Inc.*, No. 11 Civ. 5922 (PGG), 2012 WL 2700383, at *10 (S.D.N.Y. July 6, 2012) (two and a half years); *Grout Shield Distribs., LLC v. Elio E. Salvo, Inc.*, 824 F. Supp. 2d 389, 403 (E.D.N.Y. 2011) (five months).

9

is sitting on $137 billion in idle cash.[8] The new proxy may be issued immediately and, if compliant, will completely and promptly resolve any issue and allow Apple to proceed to a vote. If Apple's par value is then amended, Apple may then reap the benefits of that amendment, resolving the other burden Apple identifies.

In any event the alternative remedy Apple proposes—an injunction from this Court requiring Apple to conduct an unbundled vote after it proceeds with the invalid vote on February 27—would be at least as expensive, since it would require the mailing of an entirely new proxy and proxy card to all shareholders, and the setting of a new record date. *See* Opp. at 3. The question is not really if such costs likely will be incurred, but when. And Apple could have avoided those costs by complying with the unbundling rules in the first instance.

As to the public interest, that is "best protected by enforcement of Section 14(a) which is intended . . . to 'safeguard the corporate suffrage of shareholders.'" *Legacy Trading Grp., LLC v. Unico, Inc.*, No. 07-cv-2344-L, 2007 WL 4463974, at *2 (S.D. Cal. Dec. 18, 2007).[9] The Commission's own view is that "[t]he public interest and investor protection are well-served when persons faced with solicitations that do not comply with the proxy rules are able to go to court *to obtain equitable relief* to assure that their opponents play by those rules." Commission Amicus Br., *Koppel v. 4987 Corp.*, Nos. 98-7026 (L), 98-7048 (CON), 1998 WL 34088514, at *15-*16 (2d Cir. Nov. 5, 1998) (emphasis added). An injunction would thus serve the public interest here.

---

[8] *See Lone Star Steakhouse & Saloon, Inc. v. Adams*, 148 F. Supp. 2d at 1150 (reissuance of proxy is a "minimal" hardship); *Lewis v. Gen. Emp't Enters., Inc.*, No. 91-cv-0291, 1991 WL 11383, at *3 (N.D. Ill. Jan. 21, 1991) (injunction should issue and would "protect the right of informed corporate suffrage rather than deny it," notwithstanding defendants' claim that "the Court could later undo the damage caused by an illegal proxy").

[9] *See also, e.g., Chambers v. Briggs & Stratton Corp.*, 863 F. Supp. 900, 906 (E.D. Wis. 1994); *Lewis*, 1991 WL 11383, at *4; *Woodward & Lothrop, Inc. v. Schnabel*, 593 F. Supp. 1385, 1395 (D.D.C. 1984) (all similar).

## CONCLUSION

For the foregoing reasons and those stated in their opening brief, the Greenlight Entities respectfully request that the Court issue the requested preliminary injunction.

Dated: February 15, 2013
      New York, New York

                        Respectfully submitted,

                        */s/ Mitchell P. Hurley*
                        Mitchell P. Hurley
                        Michael A. Asaro
                        Christopher M. Egleson
                        Ashley F. Waters
                        AKIN GUMP STRAUSS HAUER & FELD LLP
                        One Bryant Park
                        New York, NY 10036
                        Tel: (212) 872-1011
                        Fax: (212) 872-1002
                        mhurley@akingump.com
                        masaro@akingump.com
                        cegleson@akingump.com
                        awaters@akingump.com

                        *Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of February, 2013, I caused a copy of the foregoing reply brief to be served on all counsel of record via the Court's ECF system.

_____
Mitchell P. Hurley